968 So.2d 616 (2007)
Abdul RAZAK, Appellant,
v.
The MARINA CLUB OF TAMPA HOMEOWNERS ASSOCIATION, INC., a Florida corporation, Appellee.
No. 2D06-3151.
District Court of Appeal of Florida, Second District.
October 10, 2007.
Rehearing Denied November 30, 2007.
Hala Sandridge and D. Finn Pressly of Fowler White Boggs Banker P.A., Tampa, for Appellant.
*617 Susan K. Spurgeon of Pennington, Moore, Wilkinson, Bell & Dunbar, P.A., Tampa, for Appellee.
DAVIS, Judge.
In this action to quiet title to real property, Abdul Razak challenges the trial court's final judgment that was entered following entry of a summary judgment finding in favor of The Marina Club of Tampa Homeowners Association, Inc. ("the Homeowners Association"). We affirm the trial court's granting of the motion for summary judgment in favor of the Homeowners Association.
In 1982, Riverwalk LTD, a condominium developer, began a project in Hillsborough County called "The Marina Club." As a part of the declaration of covenants, restrictions, and easements, the developer agreed to convey to the Homeowners Association fee simple title to the commons area free and clear of all liens on or before December 31, 1992. Prior to that date, however, due to financial difficulties, the developer conveyed its interests in the project to a wholly owned subsidiary of the bank that was providing the financing. In 1989, when the bank became insolvent, Resolution Trust Corporation ("RTC") was named as the bank's receiver. Through foreclosure proceedings unrelated to this case, RTC became the owner of the unsold units and the commons area of the project.
In October 1992, RTC offered to convey the title to the commons area to the Homeowners Association. However, believing there to be outstanding liens against the title, the Homeowners Association rejected the offer.[1] The Homeowners Association took no action to enforce the contractual rights given to it by the declaration of covenants.
In January 1993, RTC sold the project, including the commons area, to Razak's brother, Mohammed Husein Bhadelia ("Bhadelia"). Razak loaned Bhadelia the $1,075,000 purchase price of the project. This loan was evidenced by a promissory note that specified a five-year maturity date. As security for this promissory note, Bhadelia executed a mortgage on the project in favor of Razak in May 1994. This mortgage included a future advance clause that indicated that the mortgage would serve as security for any future advances that Razak made to Bhadelia for twenty years following the execution of the mortgage. The mortgage, including a copy of the note, was recorded in the public records for Hillsborough County.
In 2002, the Homeowners Association filed a declaratory action against Bhadelia in an attempt to quiet title to the commons area in the name of the Homeowners Association. The complaint was amended over time, and Razak was added as a party. The Homeowners Association, however, never obtained service of process on either Bhadelia or Razak. In 2003, Bhadelia filed a complaint against the Homeowners Association in federal court, seeking, among other types of relief, to quiet the title to all of the property obtained from RTC in his name. The Homeowners Association filed a counterclaim seeking to quiet the title to the commons area in its name. Razak was not a party to this federal litigation.
Upon being ordered to mediation by the federal district court, Bhadelia and the Homeowners Association reached a mediated settlement agreement on August 23, 2004. By the terms of this agreement, Bhadelia was to convey title to the contested property to the Homeowners Association *618 free and clear of all liens in exchange for $675,000. On February 24, 2005, the federal district court entered a final judgment based on the terms of the settlement agreement. The final judgment included specific language stating that the title to the commons property "is hereby quieted in the name of the Defendant, Marina Club of Tampa Homeowners Association, Inc." This final judgment was appealed by Bhadelia, and the Eleventh Circuit Court of Appeals affirmed the federal district court's judgment. Bhadelia v. Marina Club of Tampa, 142 Fed.Appx. 399 (11th Cir.2005), cert. denied, 546 U.S. 1090, 126 S.Ct. 1027, 163 L.Ed.2d 855 (2006).
After the federal appellate decision was announced but before the mandate was issued, Bhadelia conveyed the title to the property to Razak by a deed in lieu of foreclosure. The Homeowners Association then filed a motion in the federal district court seeking to enforce the previously entered final judgment and asking the court to find both Bhadelia and Razak in contempt. The district court denied the request to hold Razak, a nonparty, in contempt but did hold Bhadelia in contempt and awarded sanctions against him.
After obtaining the judgment from the federal district court, the Homeowners Association amended its complaint pending before the circuit court in Hillsborough County and proceeded with a quiet title action against Razak. Substitute service was obtained on Razak, and the issue placed before the trial court was whether Razak held a valid lien against the subject property. The Homeowners Association filed its motion for summary judgment arguing that the mortgage lien was void because the federal district court had quieted title in the commons property in the name of the Homeowners Association. Alternatively, the Homeowners Association argued that Razak's interest was inferior to its own because of the interest conferred on it by the declaration of covenants. As a third argument, it asserted that Razak's lien expired five years after the date of the maturity of the note.
Razak filed his answer, raising several affirmative defenses, including statute of limitations, waiver, adverse possession, and laches. He then moved for summary judgment based on those affirmative defenses. After a hearing on the cross-motions for summary judgment, the trial court granted the Homeowners Association's motion and denied Razak's without explaining the basis for its rulings. Razak now appeals the trial court's subsequent final judgment, arguing that the trial court erred both in granting the Homeowners Association's motion and in denying his.
We review de novo an award of summary judgment involving a pure question of law.[2]Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082 (Fla.2005). Based on our review of the record, we agree with the trial court that as a matter of law the Homeowners Association is entitled to final summary judgment because when the federal district court quieted title in the name of the Homeowners Association, Razak held no valid lien interest in the subject property and the title passed free and clear of all liens.
Section 95.281(1)(a), Florida Statutes (2004), provides that the lien of a mortgage encumbering real property terminates five years after the date of the maturity of the note if the maturity date can be ascertained from the record of the note and mortgage. The note that Bhadelia *619 executed in favor of Razak on January 7, 1993, stated that the note was a balloon note that matured five years from the date of execution. Accordingly, by operation of law, the lien of the mortgage given by Bhadelia to Razak to secure the note expired on January 7, 2003. Section 95.281 is considered to be a statue of repose rather than a statute of limitations. Am. Bankers Life Assurance Co. of Fla. v. 2275 W. Corp., 905 So.2d 189 (Fla. 3d DCA 2005). As such, this statute not only bars an action for foreclosure, it also prevents the accrual of a cause of action after the date established by the statute. Put another way, it does not limit the time for bringing an action, but rather establishes that after the statutory date, the cause of action does not exist. Id. Based on the operation of this statute of repose, the lien securing the promissory note terminated on January 7, 2003, and the Homeowners Association obtained title free of this encumbrance.
Razak argues that section 95.281 is not controlling here because the future advances clause of the mortgage provides him the protection provided by section 697.04(1)(a), Florida Statutes (2004), which states:
Any mortgage or other instrument given for the purpose of creating a lien on real property, or on any interest in a lease-hold upon real property, may, and when so expressed therein shall, secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of the lender, or otherwise, as are made within 20 years from the date thereof, to the same extent as if such future advances were made on the date of the execution of such mortgage or other instrument, although there may be no advance made at the time of the execution of such mortgage or other instrument and although there may be no indebtedness outstanding at the time any advance is made. Such lien, as to third persons without actual notice thereof, shall be valid as to all such indebtedness and future advances from the time the mortgage or other instrument is filed for record as provided by law.
Razak maintains that based on this language, the future advance clause represents a lien on the property for twenty years even though no future advances have been made. Razak thus suggests that the provisions of section 697.04 prevail over those of section 95.281 when a future advance clause is contained in the mortgage and that accordingly, the lien securing the initial promissory note in the instant case was valid for twenty years regardless of whether future advances were actually made. Razak's argument also suggests that this statute creates an irrevocable lien to secure future advances for twenty years even if the mortgaged property is transferred after the initial debt is satisfied and no future advances are made. We cannot agree.
Section 697.04 specifies that such a lien only secures those future advances that "are made within [twenty] years. . . ." A plain reading of this provision suggests that the twenty-year term relates to future advances that are made after the execution of the mortgage, not to the initial promissory note that was secured by the mortgage. Further, the statute creates the lien only for advances that are actually made. The record before us evidences no future advances made by Razak to Bhadelia that would effectuate the provisions of this statute.
Accordingly, we conclude that pursuant to section 95.281, the lien created by the mortgage to secure the promissory note terminated five years after the note matured. *620 Because no future advances were made, any potential lien that might have encumbered the property pursuant to section 697.04 did not exist. Therefore, when Bhadelia agreed to transfer the property to the Homeowners Association as part of the settlement of the federal lawsuit, and the federal district court quieted title to the property in favor of the Homeowners Association, Razak's potential lien already had terminated by operation of law. Although the provisions of the future advance clause may have created the potential for future liens that would relate back to the date of the original mortgage if, in fact, advances had been made, that potential was properly extinguished by Bhadelia's deeding the property to the Homeowners Association as a part of the mediated settlement in the federal court action. Thus the trial court was correct in quieting title in the name of the Homeowners Association.
We reject the argument that the trial court could not, as a matter of law, cancel any potential lien Razak may have by quieting the title and that the title must remain subject to future advances until 2013. Such an argument leads to an untenable result. The logical conclusion of such an argument would be that a mortgagee could encumber title to real property for twenty years by including a future advance clause in a mortgage, even if no advances were made and the owner was not indebted in any way to the mortgagee. Such an argument would suggest that the mortgagee could deny the original mortgagor a satisfaction of mortgage for twenty years even if no indebtedness exists. If, prior to his conveyance of the property, Bhadelia had sought a satisfaction of the mortgage, Razak would have been obligated to provide the same. See § 701.05, Fla. Stat. (2004). The Homeowners Association, in purchasing the property as part of the mediated settlement agreement, took title with the same rights and obligations as the original owner. Thus the trial court was correct in granting the request to quiet title in the name of the Homeowners Association.
Having concluded that the Homeowners Association, as the holder of title to the property pursuant to the mediated settlement agreement, was entitled to seek the quieting of the encumbrance of the potential of a future lien, we affirm the trial court's final summary judgment in favor of the Homeowners Association.
Affirmed.
SILBERMAN and KELLY, JJ., Concur.
NOTES
[1] We acknowledge that there is no evidence in this record that there were in fact liens against the commons area property. However, this potentially contested issue of fact is not relevant to the issues before this court.
[2] Although Razak argues on appeal that he provided additional funds to Husein that implicate the future advances clause of the mortgage, there was nothing in the record before the trial court nor in our record that properly raises this as a factual issue to be resolved.